IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:06CV98

| | |
|---|---|
| EVA GUNNINGS, on behalf of herself and all other persons similarly situated | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) **MEMORANDUM AND ORDER** |
| | ) |
| INTERNET CASH ENTERPRISE OF ASHEVILLE, LLC, et al., | ) ) ) |
| Defendants. | ) ) ) |

**THIS MATTER** is before the Court on the following Motions and Memoranda: (1) "Defendants Joe Dennis Grubb, James Wesley Grubb, and Dennis Grubbs' (hereinafter "Defendants Grubb") Motion to Dismiss" and Memorandum of Law in Support of Defendant Grubbs' Motion to Dismiss, both filed on September 18, 2006 [Documents ## 9, 10]; (2) Plaintiff's Reply Brief in Opposition to Defendant Grubbs' Motion to Dismiss, filed October 6, 2006 [Document # 11]; (3) Plaintiff's Motion to Amend Complaint and Plaintiff's Brief in Support of the Motion to Amend, both filed October 6, 2006 [Documents ## 12, 13]; (4) Defendant Grubbs' "Reply to Plaintiff's Response to Motions to Dismiss," filed October 20, 2006 [Document # 17]; (5) "Defendants' Response to Plaintiff's Motion to Amend," joined by all Defendants and filed October 23, 2006 [Documents ## 18, 19]; and (6) Plaintiff's Reply Brief in Support of the Motion to Amend, filed October 31, 2006 [Document # 21]. These motions are now ripe for disposition by this Court.

Having considered the pleadings, the written arguments, and the applicable authority, for the reasons stated below this Court will grant in part and deny in part Plaintiff's Motion to Amend Complaint, grant in part and deny in part Defendant Grubbs' 12(b)(2) Motion to Dismiss, and deny Defendant Grubbs' 12(b)(6) Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendants Joe Dennis Grubb, James Wesley Grubb, and Dennis Grubb were the owners of nine limited liability companies, known collectively as the Internet Cash Enterprises ("ICE"). (Pl.'s Br. Opp'n Mot. Dismiss at 2). Each of the ICEs operated a single store and was named "Internet Cash Enterprise of [city where store was located]."[1] (James Grubb Aff. ¶ 4). The ICEs were organized under the laws of Tennessee but appear to have operated exclusively within North Carolina. (James Grubb Aff. ¶ 5). They were owned 48% by Joe Grubb, 48% by James Grubb, and 4% by Dennis Grubb. (James Grubb Aff. ¶ 12).

Defendants Grubb are all residents and citizens of Tennessee. (James Grubb Aff. ¶ 3). Although they deny any day-to-day involvement in the affairs of the ICEs, Joe and James Grubb admit attending a seminar about the sale of Internet access in North Carolina immediately before the ICEs began doing business in this state. (James Grubb Aff. ¶ 16). They also admit making "a couple" of trips each to the state since that time. Id. Furthermore, Plaintiff alleges that Joe

---

[1]The court notes that Internet Cash Enterprise of Mooresville, LLC is named as a defendant by Plaintiff in her complaint. (Prop. Am. Compl. ¶ 12). In fact, it appears that this is the company which gave "rebates" to both Eva Gunnings and James Torrence. (Prop. Am. Compl. ¶¶ 36, 42). However, Plaintiff alleges that the nine ICEs operated only eight branches and fails to provide a Mooresville address in the list of stores which Plaintiff alleges were controlled, owned, or managed by at least one of the defendants. (Prop. Am. Compl. ¶¶ 18, 19). The court is unsure whether this omission was intentional. Although this question is of no significance to the court's decision on the present motions, the court wishes to bring this matter to the attention of the parties because of possible future significance.

and James Grubb have been in contact with their companies in this state through emails, phone calls, and letters. (Pl.'s Br. Opp'n Mot. Dismiss at 4). Unlike his sons, Dennis Grubb made no trips to North Carolina. (James Grubb Aff. ¶ 16).

The ICEs were established in August of 2001, the same month that the North Carolina statute authorizing payday lending expired, and began selling Internet access in North Carolina on September 1, 2001. (James Grubb Aff. ¶¶ 6-7; Prop. Am. Compl. ¶ 27). Although the nature of the businesses is disputed, Plaintiff alleges that the true purpose of the ICEs was to provide "payday loans under the guise of Internet services in an effort to evade the facts that its loans were now illegal under North Carolina law." (Prop. Am. Compl. ¶ 30).

Taken in the light most favorable to the plaintiff, the pleadings show the following: To receive an instant cash "rebate" of $120 to $360, customers of the ICEs had to sign a contract to purchase Internet services for one year. (James Grubb Aff. ¶ 11; Prop. Am. Compl. ¶ 32). This contract required the customer to pay $20 to $60 every two weeks for the service. (James Grubb Aff. ¶ 11; Prop. Am. Compl. ¶ 32). Thus, to receive a "rebate" of $120 customers were contractually obligated to repay $520; a "rebate" of $360 required $1560 to be repaid. (Prop. Am. Compl. ¶ 32). Before customers could receive their rebates, they were also required to provide a check made out for the amount of the rebate plus the contract fee. (Prop. Am. Compl. ¶ 33; see also James Grubb Aff. ¶ 11). If a customer failed to make payments, the defendant ICEs cashed this check. (Prop. Am. Compl. ¶ 33). After signing the contract, ICE customers could only access the Internet from computers located in the ICE stores. (James Grubb Aff. ¶ 10).

Plaintiff Eva Gunnings ("Plaintiff" or "Gunnings") is a resident of Mooresville, NC. (Prop. Am. Compl. ¶ 1). She is employed in food service and has a limited income. (Prop. Am.

Compl. ¶ 36). Beginning in the year 2003 and lasting until 2004, Gunnings visited at least one ICE branch on multiple occasions and was given multiple "rebates" or "loans." (Prop. Am. Compl. ¶¶ 36, 41).

Plaintiff now avers that these rebates constitute usurious loans in violation of North Carolina law and asserts multiple claims for relief. On or about June 10, 2006, Plaintiff filed suit in Iredell County against the nine defendant ICEs and the individual Defendants Grubb. On August 10, 2006, Defendants filed their notice of removal to this court.

## II. PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff's Motion to Amend Complaint seeks to add additional plaintiffs, to add additional claims for relief, to join two additional parties as defendants, and to allege more specific facts designed to show this court's jurisdiction over the Defendants Grubb. In the "Response to Plaintiff's Motion to Amend," joined by all defendants, the Defendants state that the only portion of Plaintiff's Motion to Amend to which they object is Plaintiff's request to join the additional parties American Cash Enterprise, LLC ("ACE") and Star Communications, LLC ("Star"). (Def.'s Resp. Pl.'s Mot. Am. at 1-2). After reviewing Defendants' objections, Plaintiff filed her "Reply Brief in Support of Motion to Amend" asking the court's leave to withdraw that portion of its motion seeking to add ACE and Star as parties to the lawsuit.

After a responsive pleading has been served on the plaintiff by the defendant, the plaintiff may only amend her pleading by leave of the court or by written consent of the defendant, but leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to

facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103 (1957). Thus, a plaintiff should "be given every opportunity to cure a formal defect in the pleadings." Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir.1999). For these reasons, leave to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986)). An amendment may be prejudicial, for example, if it raises a new theory shortly before or during the trial that would require additional fact gathering by the defendant to establish a defense. Id. at 427.

In this case, the additional claims and additional plaintiffs which Gunnings seeks to add have been submitted well before trial and are substantially similar to the previously pled claims for relief such that defending against these new allegations should not be unduly burdensome to or entirely unexpected by the defendants. Similarly, allowing Plaintiff to amend her complaint to add specific factual allegations which attempt to show this court's jurisdiction over the Defendants Grubb is in keeping with the liberal pleading requirements of the Federal Rules and their desire to promote resolution of issues on the merits and not on technicalities. The parties in this case likely feel the same way, for the Defendants have agreed in their "Response to Plaintiff's Motion to Amend" that these amendments should be allowed.

However, Plaintiff's attempt to add additional parties ACE and Star may lead to adjudication of claims and facts that do not arise from the same transaction or occurrence as the claims asserted against the other defendants. Therefore, adding these parties may not be appropriate. Regardless, the court does not need to decide the issue at this time because Plaintiff

has requested that the motion to amend with respect to these additional parties be withdrawn. (Pl.'s Reply Br. Supp. Mot. Am. at 1).

Since Plaintiff wishes to withdraw her Motion to Amend with respect to the only contested amendments and because the other requested amendments have been assented to by all defendants, this court will not disturb the agreement of the parties. Plaintiff's Motion to Amend Complaint to add additional plaintiffs, additional claims for relief, and additional, specific facts regarding this court's jurisdiction over the Defendants Grubb therefore will be granted. However, that portion of Plaintiff's Motion to Amend which sought to add ACE and Star as defendants to the lawsuit is denied.

### III. DEFENDANT GRUBBS' MOTIONS TO DISMISS

**A. Defendant Grubbs' 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

To prevail against a pretrial 12(b)(2) motion to dismiss, a plaintiff must only present a prima facie case of personal jurisdiction. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989). When determining whether a plaintiff has done so, this court must resolve all questions of fact, and draw reasonable inferences, in the light most favorable to the plaintiff. Id. Any of the plaintiff's uncontroverted allegations must be taken as true. Barclays Leasing v. Nat'l Bus. Sys., 750 F.Supp. 184, 186 (W.D.N.C.1990). However, if the defendant has countered these allegations with facts, then the plaintiff must come forward with her own facts showing why personal jurisdiction exists. IMO Indus., Inc. v. SEIM s.r.l., slip op., 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006).

"Federal Courts exercise personal jurisdiction in the manner provided by state law." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). For this

court to have jurisdiction over Defendants Grubb, "North Carolina's long arm statute must authorize jurisdiction and the defendant must be afforded his constitutional right to due process." Acosta v. Byrum, 638 S.E.2d 246, 252 (N.C. App. 2006) (citing Better Bus. Forms, Inc. v. Davis, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995)). North Carolina courts have interpreted N.C. Gen. Stat. § 1-75.4(1)(d) to permit the exercise of personal jurisdiction to the outer limits allowable consistent with the due process clause of the United States Constitution. Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630-31 (1977). Thus, when personal jurisdiction is determined under this statutory provision, the only question is "whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." A.R. Haire, Inc. v. St. Denis, 176 N.C. App. 255, 259, 625 S.E.2d 894, 899 (2006) (citing Sherlock v. Sherlock, 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001)).

Personal jurisdiction may be either general or specific. General jurisdiction exists when the defendant has sufficient "continuous and systematic" contacts with the forum state that he may be haled into court in that forum on any claim. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, (1984). "Specific jurisdiction is more narrow, existing where the suit against the defendant arises out of h[is] contacts with the forum state, or is related thereto." IMO Indus., at *2 (citing Helicopteros). Because Gunnings never asserts that the Defendants Grubb had "continuous and systematic" contacts with North Carolina, this court will follow the analysis for specific jurisdiction.

The Fourth Circuit Court of Appeals has synthesized the requirements of the Due Process Clause when asserting specific jurisdiction into a three-part test. This court will consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities

7

in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." New Wellington Financial Corp., 416 F.3d at 294-95 (citations and internal quotations omitted). To determine whether the exercise of personal jurisdiction would be constitutionally reasonable, this court may look at other factors such as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies. Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 946 (4th Cir. 1994) (citations omitted); See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985); Yates v. Motivation Indus. Equip. Ltd., 38 Fed. Appx. 174, 181 (4th Cir. 2002) (Wilkinson, C.J., dissenting). All three prongs must be satisfied for this court to exercise specific jurisdiction over a defendant consistent with the Due Process Clause. IMO Indus., at *2 (citing Yates, 38 Fed. Appx. at 179).

In Acosta, the plaintiff, a patient and employee of a psychiatric practice, filed suit against several other employees and against the owner of the practice for negligent infliction of emotional distress. 638 S.E.2d at 249. The owner of the practice was a resident and citizen of Alabama, and there was no evidence in the record that he was present in North Carolina when the actions giving rise to the suit occurred. Id. Despite this, the court in that case found that the owner was subject to personal jurisdiction in North Carolina and that this exercise of jurisdiction was constitutionally reasonable. Id. at 252-53. As the owner of a business in North Carolina, the court held that the defendant had purposely directed his actions toward this state and had availed himself of the protections of North Carolina law, thus establishing the minimum contacts

8

necessary to satisfy due process. Id. at 253.

In the present case, taken in the light most favorable to the plaintiff, Gunnings has met her burden of establishing a prima facie case of personal jurisdiction against James and Joe Grubb. James and Joe Grubb purposefully directed their activities at this state by establishing companies which, although incorporated elsewhere, operated exclusively within the state of North Carolina. James and Joe Grubb traveled to North Carolina for a seminar on how to run their businesses within the state. (James Grubb Aff. ¶ 16.) Furthermore, James and Joe Grubb do not deny that they maintained contact with these businesses once established and even admit visiting North Carolina on at least two subsequent occasions. (Prop. Am. Compl. ¶ 33.) Like the owner in Acosta, James and Joe Grubb availed themselves of the protection of the laws of this state by owning businesses which operated within North Carolina. Finally, the exercise of jurisdiction by this court over James and Joe Grubb is constitutionally reasonable since: (a) James and Joe Grubb should not be surprised at being haled into court in the state where their companies did extensive business; (b) the burden on James and Joe Grubb in standing trial in the Western District of North Carolina when they are residents of Tennessee is minimal; (c) the plaintiffs and the courts have an interest in resolving this dispute in a single trial; and (d) North Carolina has an interest in enforcing its laws against payday lending and protecting its citizens against those who violate these laws while doing business within the state.

On the other hand, Plaintiff concedes that at this point in time the pleadings and the record do not establish that Dennis Grubb has the minimum contacts necessary to support this court's exercise of personal jurisdiction over the defendant. Thus, all claims against Dennis Grubb will be dismissed without prejudice. If discovery reveals the necessary contacts, Plaintiff

may then seek to bring Dennis Grubb back into the case.

Therefore, for the reasons stated above, the 12(b)(2) Motion to Dismiss is <u>denied</u> as to Defendant Joe Grubb, <u>denied</u> as to Defendant James Grubb, and <u>granted</u> as to Defendant Dennis Grubb.

**B. Defendant Grubbs' 12(b)(6) Motion to Dismiss**

In the alternative, Defendants Grubb argue that Plaintiff has failed to state a claim as a matter of law and that all claims against the individual Defendants should be dismissed pursuant to Rule 12(b)(6). Because this court has already dismissed the claims against Dennis Grubb for lack of personal jurisdiction, the 12(b)(6) Motion to Dismiss will be considered only as it applies to Defendants James and Joe Grubb.

    1. <u>Standard for a Motion to Dismiss</u>

The purpose of a Rule 12(b)(6) motion is to test the adequacy of the complaint. It does not resolve arguments regarding the facts, merits of the claims, or the possible defenses. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). Therefore, a court must take the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994). Dismissal may occur only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle the plaintiff to relief. <u>Flood v. New Hanover County</u>, 125 F.3d 249, 251 (4th Cir. 1997). However, if it is obvious, as a matter of law, that no relief could be granted under any set of facts alleged by the plaintiff, then the claim must be dismissed. <u>Jackson v. Blue Dolphin Commc'ns of N.C., LLC</u>, 226 F. Supp. 2d 785, 789 (W.D.N.C. 2002).

    2. <u>Discussion</u>

James and Joe Grubb claim that Plaintiff has failed to allege any specific acts by the Grubbs in their individual capacities which caused Plaintiff's injury. As a result, James and Joe Grubb argue that N.C. Gen. Stat. § 57C-3-30(a)-(b) bars Plaintiff's claims against the Defendants. N.C. Gen. Stat. § 57C-3-30(a)-(b) provides that "a member, manager, director, [or] executive ... of a limited liability company is not liable for the obligations of the limited liability company solely by reason of [his position] and does not become so by participating ... in the management or control of the business" and that a "member of a limited liability company is not a proper party to proceedings by or against a limited liability company." However, N.C. Gen. Stat. § 57C-3-30(a) also states that "a member, manager, director, or executive may, however, become personally liable by reason of that person's own acts or conduct." Thus, the other provisions in N.C. Gen. Stat. § 57C-3-30(a)-(b) notwithstanding, "Section 57C-3-30(a) clearly anticipates that a member who is also a 'manager, director, executive, or any combination thereof' might be a defendant and 'become personally liable by reason of [his] own acts or conduct.'" State ex rel Cooper v. NCCS Loans, Inc., 174 N.C. App. 630, 643, 624 S.E.2d 371, 379-80 (2005) (quoting N.C. Gen. Stat. § 57C-3-30(a)).

In NCCS Loans, the plaintiffs alleged that an individual defendant had complete ownership and control over two limited liability companies which the court found were making usurious loans under the guise of Internet service contracts. Id. at 643, S.E.2d at 380. The plaintiffs also asserted that the individual defendant "directed, and is responsible for, all the unlawful practices alleged in [the] complaint." Id. The court in that case found that these allegations alone were sufficient to subject the defendant to personal liability. Id. Because the defendant had not filed an answer or otherwise contradicted the plaintiff's allegations, the court

11

accepted them as true and affirmed the trial court's grant of summary judgment against the individual defendant. Id. at 643-44, S.E.2d at 380.

In the present case, viewed in the light most favorable to the plaintiff, Gunnings has alleged facts sufficient to withstand James and Joe Grubbs' 12(b)(6) Motion to Dismiss. Like the plaintiffs in NCCS Loans, in this case Gunnings has alleged that James and Joe Grubb owned and controlled the limited liability companies whose business practices are at issue. James and Joe Grubb admit to their ownership of the ICEs, and although they deny involvement in the day to day management of the individual ICEs, they nowhere deny that they exerted control over these companies. In addition, Gunnings has asserted that James and Joe Grubb were "directly and personally involved in the fraudulent scheme" alleged in the complaint and "made the final decision that ICE stores in North Carolina would offer usurious loans." (Prop. Am. Compl. ¶¶ 17, 116.)

Based on these facts, allegations, and the applicable law, James and Joe Grubb have not shown that the Plaintiff's claims fail as a matter of law. For this reason, the court will not at this time dismiss the complaints against them. James and Joe Grubbs' Motion to Dismiss pursuant to Rule 12(b)(6) is therefore denied.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED**, that Plaintiff's Motion to Amend Complaint is, in accordance with this opinion, hereby **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED**, that Defendant Grubbs' Motion to Dismiss pursuant to Rule 12(b)(2) is hereby **GRANTED** as to Dennis Grubb and **DENIED** as to James and Joe Grubb.

**IT IS FURTHER ORDERED**, that Defendant Grubbs' Motion to Dismiss pursuant to Rule 12(b)(6) is hereby **DENIED** as to James and Joe Grubb.

Signed: June 29, 2007

Richard L. Voorhees
United States District Judge